**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 13 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TOMA VAGLARSKI, | No. 17-16514 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-01987-MCE-KJN |
| v. | |
| MATTHEW G. WHITAKER, Acting Attorney General and BENJAMIN WAGNER, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Submitted December 20, 2018**
San Francisco, California

Before: BOGGS,*** PAEZ, and OWENS, Circuit Judges.

Toma Vaglarski appeals the denial of his petition for writ of error coram

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

nobis. We have jurisdiction pursuant to 28 U.S.C. § 1291. Applying de novo review, *United States v. Chan*, 792 F.3d 1151, 1153 (9th Cir. 2015), we vacate and remand with instructions to conduct an evidentiary hearing.

**1.** Vaglarski is a lawful permanent resident of the United States. In August 2013, Vaglarski was arrested in the Shasta Trinity National Forest for possession of marijuana. On November 5, 2013, Vaglarski appeared before a magistrate judge, pleaded guilty to 21 U.S.C. § 844, and was sentenced to pay a fine of $1,000. There is no transcript or audio recording of what transpired during the hearing.

Shortly after paying the fine in March 2014, Vaglarski applied to naturalize as a U.S. citizen. About a year later, the U.S. Citizenship and Immigration Services denied Vaglarski's naturalization application, explaining that the 2013 conviction is a bar to good moral character, thereby rendering Vaglarski ineligible for naturalization pursuant to 8 U.S.C. § 1101(f)(3) and 8 C.F.R. § 316.10. Vaglarski subsequently filed a petition for writ of error coram nobis with the district court, arguing that he should be allowed to withdraw his plea because he had not been advised of his right to an attorney, his trial rights, or the immigration consequences of his plea. As a result of the conviction, Vaglarski is considered removable under 8 U.S.C. § 1227(a)(2)(B)(i) and he is unable to petition on behalf of his noncitizen wife for lawful permanent residence status.

**2.** "[T]he writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *Chan*, 792 F.3d at 1153 (internal citation and quotation marks omitted). To obtain relief, the petitioner must show: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). The only issue in dispute is whether Vaglarski can show a fundamental error, i.e., an invalid guilty plea.

"It is beyond dispute that a guilty plea must be both knowing and voluntary" because "a guilty plea constitutes a waiver of three constitutional rights: the right to a jury, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 28–29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969)). Thus, a guilty plea without an affirmative showing that the plea was knowing and voluntary constitutes a due process violation. *Boykin*, 395 U.S. at 242. On collateral attack, however, there is a presumption of regularity to silent records and so the burden shifts to a defendant, such as Vaglarski, to make an affirmative showing of an invalid waiver. *Parke*, 506 U.S. at 36–37; *United States v. Mulloy*, 3 F.3d 1337, 1339 (9th Cir.

1993); *see also United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998), *as amended* (Sept. 22, 1998).

**3.** The district court relied on *Parke*, *Mulloy* and *Allen* to conclude that Vaglarski could not meet his burden through his "self-serving declaration." This analysis, however, was incomplete. Rather than viewing Vaglarski's declaration in isolation, the district court should have weighed all the evidence put forward by Vaglarski and the government in the context of the entire court record. *See Parke*, 506 U.S. at 36–37; *Mulloy*, 3 F.3d at 1340–42; *see also Allen*, 153 F.3d at 1041–42.

First, it was insufficient for the court to dismiss Vaglarski's declaration as "self-serving," without making findings regarding the credibility of the assertions in the declaration. *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993) ("The district court must make a finding of fact that the affidavit was a 'sham.'") (internal citation omitted); *see also SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (noting "[t]hat an affidavit is selfserving [sic] bears on its credibility, not on its cognizability") (internal citation omitted).

Second, Vaglarski submitted other evidence that was not considered by the district court, such as a copy of his N-400 naturalization application, which indicated that at the time Vaglarski applied for citizenship, he erroneously believed that he had not been convicted. Moreover, neither the petty offense docket nor the

4

Central Violations Bureau Citation Information mentions a guilty plea or the statute to which Vaglarski had pleaded. Vaglarski was 24 years old at the time, and the event was his first encounter with the criminal justice system. These circumstances tend to corroborate Vaglarski's assertions that he did not understand that he was giving up his trial rights when he pled guilty.[1] *See United States v. Fuller*, 941 F.2d 993, 996 (9th Cir. 1991) (finding no basis for knowing waiver of counsel by noncitizen defendant "[g]iven [her] unfamiliarity with English, her young age [of 23] and lack of experience within the legal system"); *see also Parke*, 506 U.S. at 37.

**4.** Given the state of the record, we remand for an evidentiary hearing and factual findings regarding the circumstances of Vaglarski's plea. *See, e.g., United States v. Larson*, 302 F.3d 1016, 1022 (9th Cir. 2002) (citing *Mulloy*, 3 F.3d at 1341–42 in support of remand for an evidentiary hearing). Although there is no

---

[1] The dissent completely disregards the additional evidence submitted by Vaglarski to corroborate his declaration. *Compare Mulloy*, 3 F.3d at 1340 (acknowledging that the defendant "presented a considerable amount of evidence considering the circumstances of his [earlier] conviction, even though no transcript could be produced," including his young age at the time, and the fact that he was arraigned, pleaded guilty and was sentenced all in one hearing on the same day), *with Parke*, 506 U.S. at 36–37 (noting there was enough evidence in the record to uphold the defendant's conviction because he was represented by counsel, had signed a form specifying the charges to which he agreed to plea guilty, and had prior experience with the criminal justice system). For the same reasons, the dissent's concern about a "parade of horribles," is unwarranted because our disposition is limited to the record presented here.

transcript or audio recording of the hearing, the government could submit evidence about the usual customary procedures on the petty offense docket and any other evidence relevant to Vaglarski's plea. If the district court finds that Vaglarski did not knowingly and voluntarily plead to the 2013 conviction without understanding the nature of the charges or his right to counsel or *Boykin* trial rights, then he has shown a fundamental error and his plea should be withdrawn and the conviction vacated. *See, e.g., United States v. Kwan*, 407 F.3d 1005, 1018 (9th Cir. 2005).

**VACATED** and **REMANDED**. Each party shall bear their own costs.

Boggs, Circuit Judge, dissenting:

I appreciate the important considerations that are well set out in the majority opinion. However, I cannot agree that those considerations overcome the fairly clear mandate in *Parke v. Raley*, 506 U.S. 20, 30–31 (1992), that there is a substantial difference between a *Boykin* claim that is raised on direct appeal, and one that is raised in a collateral proceeding. On direct appeal, warning of constitutional rights cannot be presumed from a silent record. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Under *Parke*, 506 U.S. at 29–30, on collateral attack, a court may presume that the final judgment of conviction was validly obtained, even when the record is silent or ambiguous. *See also United States v. Mulloy*, 3 F.3d 1337, 1339 (9th Cir. 1993) (explaining that *Boykin*'s presumption of invalidity does not apply on collateral review).

Here, we have a federal proceeding, albeit one involving "petty offenses," to which I would think that some presumption of regularity should attach. It is true that, despite their best efforts, the United States and Petitioner cannot locate a transcript or audio recording of the proceedings. While I would not discount Petitioner's statements simply because they are self-serving, he provides no details beyond a flat denial that he ever signed a plea form or waived his *Boykin* rights. Nor is there any indication of an attempt to procure evidence, other than Petitioner's

requests to the Clerk's Office to confirm that no records exist. Petitioner has not sought evidence from other individuals who could shed some light on the proceedings, such as the magistrate judge or the assistant United States Attorney. *See Mulloy*, 3 F.3d at 1341 (affidavits from the prosecutor and defense counsel); *United States v. Robinson*, 12 F.3d 1110, at *3 (9th Cir. 1993) (affidavit from the sentencing judge concerning custom in sentencing proceedings). Petitioner must carry the "burden of proving the constitutional invalidity" of his conviction. *Mulloy*, 3 F.3d at 1339. I am not convinced that he has done so.

While I do not wish to introduce a "parade of horribles," it would appear that, under the majority's interpretation of *Parke*, whenever a record of a federal-court proceeding cannot be found, a convicted person can deny that he has received the proper warnings, shift the burden of proof to the government, and trigger a new sent of proceedings on his offense. *Mulloy* dictates that a defendant cannot satisfy his burden simply by pointing to a "silent or ambiguous record." *Ibid.* While resolving a case with an entirely silent record presents a close question, *Parke* requires more from Petitioner than simply his assertion that regular order in a federal court was not followed. 506 U.S. at 29–30.

I therefore respectfully dissent.