**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-30120 |
| Plaintiff-Appellee, | D.C. Nos. 6:19-cr-00003-CCL-1 6:19-cr-00003-CCL |
| v. | |
| K. JEFFERY KNAPP, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted May 5, 2021
Seattle, Washington

Before: CHRISTEN and BENNETT, Circuit Judges, and SILVER,** District Judge.

Defendant K. Jeffery Knapp appeals his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

In 1994, Knapp was convicted by a Colorado court of second-degree sexual assault and intimidating a witness. He was sentenced to eight years in prison for the sexual assault and six years for intimidating a witness, with the sentences to be served consecutively. After serving nine years, Knapp was released from prison in February 2003. When released, he was given a document that stated he was "unconditionally discharged from the custody of the Department of Corrections pursuant to [Colo. Rev. Stat. §] 18-1-105." In 2019, the government executed a search warrant at Knapp's home and seized sixteen firearms and ammunition. The government then charged Knapp with violating § 922(g)(1). Knapp stipulated to the fact of his prior Colorado convictions and to his knowing possession of the firearms found in his home. At trial, Knapp testified that he thought his right to possess a firearm had been restored by his discharge document. The jury found him guilty, and the district court sentenced him to 63 months. Knapp appeals his conviction and sentence.

1. Knapp contends that his right to possess a firearm was restored by operation of Colorado law, and thus he was not a convicted felon for the purposes of § 922(g)(1). We review de novo the district court's denial of Knapp's motion to dismiss on this ground. *United States v. Ziskin*, 360 F.3d 934, 942 (9th Cir. 2003).

Section 921(a)(20) provides that "[a]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of

2

[§ 922(g)(1)], unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). Thus, "we must determine whether state law expressly prohibited [the defendant] from possessing firearms, notwithstanding the substantial restoration of his civil rights." *United States v. Collins*, 61 F.3d 1379, 1382 (9th Cir. 1995). Knapp argues that we should analyze whether Colorado law prohibited him from possessing firearms by looking at the law at the time he was indicted for his Colorado crimes. But our caselaw is clear that we "must look to the whole of state law *at the time of restoration* of civil rights." *United States v. Huss*, 7 F.3d 1444, 1446 (9th Cir. 1993) (alteration omitted) (rejecting defendant's argument that "we look to the state law in effect at the time of conviction"), *overruled on other grounds by United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998) (en banc). Colorado automatically restores substantial civil rights to felons once they have completed their sentences. *See, e.g.*, Colo. Const. art. 7 § 10. While Knapp's civil rights were substantially restored when he was released from prison in 2003, Colorado law at that time prohibited all firearm possession by convicted felons. Colo. Rev. Stat. § 18-12-108(1) (2002). Thus, Knapp's right to possess a firearm was not restored by Colorado law.

Knapp also argues that applying Colorado's felon-in-possession law at the time of his release violates the Ex Post Facto Clause. We disagree. A statute is not

3

an ex post facto law if it is "a bona fide regulation of conduct which the legislature has power to regulate," and the "overall design and effect of the statute . . . bear out the non-punitive intent." *Huss*, 7 F.3d at 1447–48 (citation omitted). Colorado's felon-in-possession law, Colo. Rev. Stat. § 18-12-108(1), is non-punitive because a prior felony conviction "can reasonably be said to indicate unfitness to engage in the future activity of possessing firearms." *Id.* at 1448. Further, section 18-12-108(1) is "part of a larger statutory scheme designed to regulate the possession of firearms." *Collins*, 61 F.3d at 1383; *see* Colo. Rev. Stat. § 18-12-108.5(1) (prohibiting juveniles from possessing firearms). Thus, application of section 18-12-108(1) to Knapp does not violate the Ex Post Facto Clause.

2. Knapp also appears to argue that his right to possess a firearm was restored by his discharge document, despite Colorado law. *See United States v. Laskie*, 258 F.3d 1047, 1049–50 (9th Cir. 2001). Knapp characterizes his argument as a sufficiency of the evidence claim because the district court submitted to the jury the issue of whether Knapp's right to possess a firearm was restored. However, § 921(a)(20)'s restoration exception "is a question of law to be decided by the judge," *United States v. Akins*, 276 F.3d 1141, 1146 (9th Cir. 2002), *overruled on other grounds as recognized by United States v. Lenihan*, 488 F.3d 1175 (9th Cir. 2007) (per curiam), even when the purported restoration is premised on a discharge document, *see Laskie*, 258 F.3d at 1049. Thus, the fact that the jury decided the

question against Knapp is irrelevant to our review. As a matter of law, the discharge document did not restore Knapp's rights, because it is silent as to restoration of rights. *See Jennings v. Mukasey*, 511 F.3d 894, 901 (9th Cir. 2007). Accordingly, however characterized, Knapp's argument fails.

3. Knapp challenges the sufficiency of the evidence about his knowledge of his status as a convicted felon. After *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the government must prove the defendant knew he was a convicted felon in § 922(g)(1) cases. *See United States v. Singh*, 979 F.3d 697, 727–28 (9th Cir. 2020). Section 921(a)(20) defines § 922(g)(1) to exclude convictions for which the felon's rights have been restored. Thus, Knapp argues that *Rehaif* extends to § 921(a)(20) and requires the government to prove beyond a reasonable doubt that he knew his right to possess a firearm was not restored. We assume without deciding that *Rehaif* extends to the restoration exception in § 921(a)(20) and evaluate Knapp's claim on the merits.

Knapp raises this argument as a sufficiency of the evidence claim, which we review de novo because he preserved his claim before the district court. *United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). Thus, we view the evidence "in the light most favorable to the prosecution," and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1014–15 (citation omitted).

5

We conclude that the government presented sufficient evidence that Knapp knew his right to possess a firearm was not restored. Knapp testified that he regained his civil rights upon his release from prison because the discharge document stated he was "unconditionally discharged," and thus he thought he was "restored to [his] full rights as a United States citizen." He also testified that he thought the discharge document's restoration included his right to possess a firearm, because "[i]f anybody had ever told me that I'd lost my gun rights, there would be the place to state it." However, on cross-examination, Knapp conceded that the discharge document did not explicitly restore or even mention any civil rights (or firearm possession). A rational juror could have found Knapp's explanation unreasonable and discredited his testimony that he thought the discharge document restored his rights. Knapp also testified that he had never tried to purchase a firearm, despite accumulating a significant collection of firearms and ammunition by other means. Viewing the evidence in the light most favorable to the government, there was sufficient evidence for at least one rational juror to conclude that Knapp knew his right to possess a firearm was not restored.

4. Knapp claims the district court made several sentencing errors. First, he argues the district court erred in denying him a two-level reduction in his offense level for acceptance of responsibility. *See* U.S. Sent'g Guidelines Manual (U.S.S.G.) § 3E1.1(a). We review the district court's determination for clear error.

6

*United States v. Gillam*, 167 F.3d 1273, 1279 (9th Cir. 1999). Although Knapp

stipulated to the firearm possession and his previous convictions, he contested at trial

the issue of whether he knew his status as a convicted felon. Knapp's insistence that

he lacked the mens rea to violate § 922(g)(1) is "incompatible with acceptance of

responsibility." *United States v. Burrows*, 36 F.3d 875, 883 (9th Cir. 1994).

Second, Knapp argues the district court improperly enhanced his offense level

by finding that his second-degree sexual assault conviction qualified as a crime of

violence. *See* U.S.S.G. § 2K2.1(a)(3). We review de novo whether a state crime is

a crime of violence. *United States v. Slade*, 873 F.3d 712, 714 (9th Cir. 2017). The

government concedes that Knapp's statute of conviction, Colo. Rev. Stat. § 18-3-

403 (repealed 2000), reaches conduct that would not constitute a crime of violence.

But the statute is divisible because its subsections constitute functionally separate

crimes—the subsections have different mens rea requirements, and prohibit conduct

ranging from statutory rape to sexual assault in medical contexts.[1] Because the

---

[1] Knapp's statute of conviction provided:

> (1) Any actor who knowingly inflicts sexual penetration or sexual intrusion
> on a victim commits sexual assault in the second degree if:
> (a) The actor causes submission of the victim to sexual penetration by any
> means other than those set forth in section 18-3-402 [first-degree sexual
> assault statute], but of sufficient consequence reasonably calculated to cause
> submission against the victim's will; or
> (b) The actor causes submission of the victim to sexual intrusion by any means
> other than those set forth in section 18-3-402 [first-degree sexual assault

7

statute is divisible, we look at Knapp's charging document, judgment of conviction, and the docket sheet from his trial, which establish that Knapp was convicted of second-degree sexual assault under either subsection (a) or subsection (b) of section 18-3-403(1). *See Coronado v. Holder*, 759 F.3d 977, 985–86 (9th Cir. 2014). Thus, Knapp's crime was "sexual penetration [or intrusion] on a non-consenting victim." *People v. Smith*, 638 P.2d 1, 4 (Colo. 1981) (interpreting section 18-3-403(1)(a), (b)). That crime is categorically a "forcible sex offense." *See* U.S.S.G. § 4B1.2(a)(2). A "forcible sex offense" does not require force or violence, "so long as consent to the sex offense was shown to be lacking," *United States v. Gallegos-Galindo*, 704 F.3d 1269, 1272 (9th Cir. 2013), *abrogated on other grounds by*

___

statute], but of sufficient consequence reasonably calculated to cause submission against the victim's will; or
(c) The actor knows that the victim is incapable of appraising the nature of the victim's conduct; or
(d) The actor knows that the victim submits erroneously, believing the actor to be the victim's spouse; or
(e) At the time of the commission of the act, the victim is less than fifteen years of age and the actor is at least four years older than the victim and is not the spouse of the victim; or
[(f) repealed]
(g) The victim is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over the victim and uses this position of authority, unless the sexual intrusion is incident to a lawful search, to coerce the victim to submit; or
(h) The actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices.

Colo. Rev. Stat. § 18-3-403 (repealed 2000).

*Descamps v. United States*, 570 U.S. 254 (2013), and covers any sexual contact, not just sexual penetration, *see United States v. Quintero-Juno*, 754 F.3d 746, 753–54 (9th Cir. 2014). The district court thus did not err in finding that Knapp had been convicted of a crime of violence.

Third, Knapp claims the district court erred in applying the semiautomatic firearm enhancement, *see* U.S.S.G. § 2K2.1(a)(3), because the Sentencing Commission lacked the authority to promulgate that enhancement. This presents a question of law we review de novo. *United States v. Booten*, 914 F.2d 1352, 1354 (9th Cir. 1990). The semiautomatic firearm enhancement was initially promulgated at the direction of Congress pursuant to the Violent Crime Control and Law Enforcement Act ("VCCLEA"). *See* Pub. L. No. 103-322, § 110501, 108 Stat. 1796, 2015 (1994). The expiration of the VCCLEA in 2004 does not affect the justifications for the semiautomatic firearm enhancement, *see United States v. Maness*, 566 F.3d 894, 897 (9th Cir. 2009) (per curiam), especially when the Sentencing Commission later reenacted the enhancement in Amendment 691, *see* U.S.S.G. app. C. Further, the enhancement for possession of semiautomatic firearms relates to "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense," as well as "the public concern generated by the offense." 28 U.S.C. § 994(c)(2), (5). Thus, the Sentencing Commission had the authority to promulgate the enhancement, and the district court did not err in

applying it here.

Finally, Knapp challenges the substantive reasonableness of the district court's sentence. We review for abuse of discretion, considering the totality of the circumstances and the 18 U.S.C. § 3553(a) factors. *United States v. Ressam*, 679 F.3d 1069, 1087–88 (9th Cir. 2012). The district court correctly calculated Knapp's total offense level at 26, with a Guidelines imprisonment range of 63 months to 78 months. The court considered the relevant factors and ultimately sentenced Knapp to 63 months' imprisonment—the low end of the Guidelines range. We find the district court's sentence substantively reasonable.

**AFFIRMED.**